| | USDC SDNY |
|---|---|
| UNITED STATES DISTRICT COURT | DOCUMENT |
| SOUTHERN DISTRICT OF NEW YORK | ELECTRONICALLY FILED |
| ------------------------------------------------------------ X | DOC #: _____ |
| : | DATE FILED: October 16, 2017 |

```
------------------------------------------------------------ X
                                                             :
KIRBY MCINERNEY LLP and BL FUNDING                           :
3 LLC,                                                       :
                                                             :
                              Plaintiffs,                    :
             -v-                                             :
                                                             :        17-cv-4760 (KBF)
                                                             :
LEE MEDICAL, INC.,                                           :
                              Defendant.                     :        OPINION & ORDER
------------------------------------------------------------ X
```

KATHERINE B. FORREST, District Judge:

On June 22, 2017, plaintiffs Kirby McInerney LLP ("KM") and BL Funding 3 LLC ("BL") filed a complaint and petition to (1) compel arbitration pursuant to Section 4 of Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, and (2) enjoin LMI from pursuing its claims in state court. (ECF No. 1.) Also pending before the Court is defendant Lee Medical, Inc.'s ("LMI") motion to dismiss, or in the alternative, to stay proceedings. (ECF No. 9.)[1] For the reasons set forth below, defendant's motion is DENIED; plaintiffs' petition to compel arbitration is GRANTED; and plaintiffs' motion for an injunction is DENIED.

I. BACKGROUND & PROCEDURAL HISTORY

In February 2007, LMI became involved in litigation against Bard Access Systems, Inc. and other defendants ("Bard Litigation"). (Compl. ¶ 14; Mem. in Supp. of Mot. to Dismiss, or in the Alternative, to Stay ("Mem. in Supp.") at 3.) LMI retained North Pursell & Ramos PLC ("NPR") to represent it in those proceedings, but in January 2015 replaced NPR with KM. (Petitioners' Mem. of Law in Opp. to

---
[1] This case was transferred to the undersigned on September 11, 2017.

LMI's Mot. to Dismiss, or in the Alternative, to Stay ("Mem. in Opp.") at 1.) KM and LMI agreed to a contingency fee arrangement, outlined in a retainer agreement ("Retainer Agreement") that also contained an arbitration provision, which stated:

> Any dispute between KM and Lee Medical will be subject to the laws of the State of New York, United States, and resolved in New York City via arbitration according to American Arbitration Association rules and procedures. Neither KM nor any of its members or employees agree to submit to the jurisdiction of any court outside of the State of New York for any reason.

(Decl. of Daniel Hume in Opp. to LMI's Mot. to Dismiss, or in the Alternative to Stay, Ex. A ("Retainer Agreement") at 2; see also Mem. in Opp. at 1.)

BL funded the litigation pursuant to an agreement with LMI ("Funding Agreement") that similarly contained an arbitration provision stating:

> Any dispute, claim or disagreement arising out of, in connection with or in any way related to this Agreement or the breach thereof, . . . will be settled by arbitration . . . . The arbitration will take place in New York, New York, unless another venue is mutually agreed to by the parties in writing. . . . Except as provided herein, the procedure for the arbitration will be in accordance with the Commercial Arbitration Rules of the American Arbitration Association . . . .

(Decl. of Daniel Hume in Opp. to LMI's Mot. to Dismiss, or in the Alternative to Stay, Ex. B ("Funding Agreement") at 2; see also Mem. in Opp. at 1.) In June/July 2015, KM obtained a settlement for LMI with some of the Bard Litigation defendants, (Compl. ¶ 20); afterward, KM's representation ended and LMI voluntarily dismissed its claims against the remaining defendants, (id. ¶ 22).

Meanwhile, in January 2015, NPR had filed a lawsuit in Tennessee state court against LMI seeking: (1) a declaratory judgment as to whether LMI must compensate NPR for its work in the Bard Litigation on a contingency fee or

2

quantum meruit basis; and (2) enforcement of its statutory charging lien on the settlement proceeds of the Bard Litigation. (Id. ¶ 23.) On September 22, 2016, NPR added KM and BL as defendants to that litigation. (Id. ¶ 27.) On June 7, 2017, LMI asserted cross-claims against KM and BL challenging the amounts to which they are entitled under the Retainer and Funding Agreements, and claiming KM mismanaged the settlement fund. (Id. ¶¶ 31-32.) (LMI filed amended cross-claims—adding several allegations but no new claims—on June 16, 2017. (Id. ¶ 34.))

Seeking to compel arbitration of those cross-claims, KM and BL filed the instant petition in the Southern District of New York on June 22, 2017, to which LMI responded with a motion to dismiss, or in the alternative to stay, on August 3, 2017. (Id. ¶¶ 36-52; ECF No. 9.) On July 6, 2017, KM and BL filed a joint motion in state court to stay the Tennessee proceedings, or to strike or dismiss LMI's claims against KM and BL. (Mem. in Opp. at 6.) On August 18, 2017, the Tennessee court held a hearing, and on August 31, 2017, that court granted the motion in part, (1) striking LMI's cross-claims for failure to seek leave to amend its answer; (2) granting LMI's oral motion to amend its answer to assert the cross claims (which the court deemed filed as of August 31, 2017); (3) staying all matters related to those cross claims and other claims against BL and KM until further notice; and (4) setting a trial date for NPR's claims against LMI. (Id. at 6-7; Hume Decl. Ex. C at 2-3.)

3

II. ABSTENTION

LMI's motion to dismiss argues that the federal court should decline to exercise jurisdiction under <u>Colorado River Water Conservation District v. United States</u>, 424 U.S. 800 (1976).

A. <u>Legal Principles</u>

Typically, a federal court abstains from exercising jurisdiction in one of three situations: (1) when the federal constitutional issue presented could be mooted by a state court determination on a relevant question of state law, <u>see</u> <u>Cnty. of Allegheny v. Frank Mashuda Co.</u>, 360 U.S. 185 (1959); <u>Railroad Comm'n of Texas v. Pullman Co.</u>, 312 U.S. 496 (1941); (2) when difficult questions of state law are presented and bear on "policy problems of substantial public import whose importance transcends the result in the case at bar," <u>Telesco v. Telesco Fuel & Masons' Materials, Inc.</u>, 765 F.2d 356, 360 (2d Cir. 1985) (citing <u>La. Power & Light Co. v. City of Thibodaux</u>, 360 U.S. 25 (1959)); and (3) when federal jurisdiction was invoked to restrain state criminal or tax proceedings, <u>Younger v. Harris</u>, 401 U.S. 37 (1971).

But under "exceptional circumstances," a federal court may choose to abstain from hearing a case—even when it does not fall into one of those three categories—if "a countervailing interest would be served by permitting the state court to adjudicate the controversy." <u>Telesco</u>, 765 F.2d at 360 (2d Cir. 1985); <u>see also</u> <u>Col. River</u>, 424 U.S. at 813 ("'Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing

4

interest.'" (quoting Cnty. of Allegheny, 360 U.S. at 188-189)). Colorado River abstention is thus "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it'"—it is "the exception, not the rule." Col. River, 424 U.S. at 813 (quoting Cnty. of Allegheny, 360 U.S. at 188-189.

Under Colorado River, abstention may be proper based on "considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." Id. at 817. The first determination for the Court is whether there are proceedings in state court that are "parallel" to the federal proceedings. Dittmer v. Cnty. of Suffolk, 146 F.3d 113, 117-18 (2d Cir. 1998) ("The principles of Colorado River are to be applied only in situations 'involving the contemporaneous exercise of concurrent jurisdictions.'" (quoting Kirkbride v. Cont'l Cas. Co., 933 F.2d 729, 734 (9th Cir. 1991))). For proceedings to be "parallel," the parties, issues, and relief sought must be the same. Dalzell Mgmt. Co. v. Bardonia Plaza, LLC, 923 F. Supp. 2d 590, 597 (S.D.N.Y. 2013) (quoting Shields v. Murdoch, 891 F. Supp. 2d 567, 577 (S.D.N.Y. 2012)).

If the proceedings are in fact parallel, then the Court applies a six-factor test to determine whether Colorado River abstention is appropriate:

> (1) whether the controversy involves a res over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights.

5

Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist., 673 F.3d 84, 100-01 (2d Cir. 2012); see also Woodford v. Cmty. Action Agency, 239 F.3d 517, 522 (2d Cir. 2001) (describing the same test).

The Supreme Court has noted that the test should "be applied in a pragmatic, flexible manner with a view to the realities of the case at hand" and that the balance tips "heavily . . . in favor of the exercise of jurisdiction."  Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 17 (1983) (applying the Colorado River six-factor test to a petition for an order to compel arbitration); see also Woodford, 239 F.3d at 522 ("'No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required.'" (quoting Moses H. Cone, 460 U.S. at 15-16)).  "Although federal courts are not bound to give weight to each factor—indeed, we are warned by Cone to avoid applying a 'mechanical checklist,'" a district court cannot fail to "consider factors weighing against dismissal" such that "the presumption in favor of exercising jurisdiction [turns] on its head."  Bethlehem Contracting Co. v. Lehrer/McGovern, Inc., 800 F.2d 325, 328 (2d Cir. 1986).  And on a motion to dismiss or stay federal proceedings based on Colorado River abstention, "the burden of persuasion rest[s] on the party opposing the exercise of federal jurisdiction." Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York, 762 F.2d 205, 210 (2d Cir. 1985).

6

B. <u>Analysis</u>

LMI argues that the Court should dismiss or stay this litigation under <u>Colorado River</u>. However, <u>Colorado River</u> abstention is not appropriate here—the proceedings are not parallel, and even if they were, application of the six <u>Colorado River</u> factors counsels against abstention.

1. <u>Parallel Proceedings</u>

The ongoing litigation in Tennessee is not "parallel" to this case simply because some of the parties are the same and the claims arise out of the same set of facts. In Tennessee, the litigation was initiated by NPR, which remains a plaintiff with claims that comprise a large portion of that litigation—the only portion, in fact, that is not currently stayed. LMI has asserted cross-claims against KM and BL, the parties here, but those claims are for a declaratory judgment that KM and BL are not entitled to payment; for breach of fiduciary duty by KM; for various torts against BL and KM; and for declaratory judgment that the Funding Agreement is unenforceable. (Mem. in Supp., Ex. A ¶¶ 44-82.) In the litigation before this Court, KM and BL bring a petition to compel arbitration. (ECF No. 1.) There is a different set of parties, a different set of issues, and different relief sought in the federal case. While one of KM and BL's stated grounds for dismissal in the Tennessee litigation is the existence of the arbitration agreements, that is not enough—if the parties, issues, and relief sought are not the same, the proceedings are not parallel. <u>Dalzell Mgmt. Co.</u>, 923 F. Supp. 2d at 597.

2. Colorado River Factors

Even if the two proceedings were parallel, the six Colorado River factors weigh heavily against this Court abdicating jurisdiction over this case.

First is the "paramount" consideration: whether there is a risk of piecemeal litigation if this Court exercises jurisdiction over the KM and BL's petition. See Moses H. Cone, 460 U.S. at 19. "The classic example arises where all of the potentially liable defendants are parties in one lawsuit, but in the other lawsuit, one defendant seeks a declaration of nonliability and the other potentially liable defendants are not parties." Woodford, 239 F.3d at 524. There is no such risk here. The Tennessee court has stayed LMI's claims against KM and BL indefinitely to "see what [the federal court] has to say before [the state court] does anything." (Reply Mem. in Supp. of Mot. to Dismiss, or in the Alternative, to Stay ("Reply Mem."), Ex. A ("Aug. 18 Tr.") at 50:12-21). It seems unlikely that those claims will be addressed in the state forum before this litigation is resolved. There is no "risk of inconsistent outcomes not preventable by principles of res judicata and collateral estoppel." Woodford, 239 F.3d at 524.[2]

---

[2] LMI argues that the Tennessee judge made the decision to stay based on KM and BL's "misrepresentation that this Court would decide the Motion [to Compel Arbitration] at the case management conference on September 8, 2017." (Reply Mem. in Supp. at 7.) This Court perceives no such misrepresentation. BL's attorney, Michael Harmon, told the Tennessee court that the conference was "not an initial case management conference" and "also not a trial if you will." (Aug. 18 Tr. at 16:5-7.) He said only that he understood it to be a "special type of conference set when you have . . . arbitration issues brought before a court." (Aug. 18 Tr. at 15:22-24.) As such, there is no reason for this Court to believe that the reasoning of the Tennessee judge in granting the stay was based on false information.

8

And even if that were not the case, the "relevant federal law <u>requires</u> piecemeal resolution when necessary to give effect to an arbitration agreement"—the issue before the Court here. <u>Moses H. Cone</u>, 460 U.S. at 20 ("Under the Arbitration Act, an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement."). A decision that allows the question of arbitrability "to be decided in federal rather than state court does not cause piecemeal resolution of the parties' underlying disputes." <u>Id.</u> Either way, this factor weighs in favor of federal jurisdiction.

The second factor for the Court to consider is whether federal law provides the rule of decision. When resolving a petition to compel arbitration, the FAA provides the rule of decision and "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." <u>Id.</u> at 24. LMI argues that state and federal courts have concurrent jurisdiction under the FAA, and that a Tennessee statute might invalidate the Funding Agreement. (Reply Mem. at 8-9.) But neither of these arguments provides the "'clearest of justifications'" that will suffice under <u>Colorado River</u> to "justify the surrender of that jurisdiction." <u>Moses H. Cone</u>, 460 U.S. at 25-26 (quoting <u>Col. River</u>, 424 U.S. at 818-19). The Court need not find that federal law is the only consideration in the case—it must only "ascertain whether there exist 'exceptional' circumstances" that warrant the abdication of federal jurisdiction. Neither the existence of concurrent jurisdiction

9

nor the possible application of a state law to one of the arbitration agreements at issue is a "substantial reason" for this Court to abstain. See id. at 24-26.

The third factor compares the order in which jurisdiction was obtained and how far litigation has advanced in each court. The litigation in Tennessee was initiated several years ago, but the cross-claims against KM and BL were filed on June 7, 2017 (and the amended cross-claims were filed on June 16, 2017). On June 22—fifteen days later—KM and BL brought this petition to compel arbitration.[3] This suit was not ripe until the cross-claims were filed, and KM and BL did not delay in seeking to compel arbitration. Furthermore, LMI's cross-claims are stayed, while here, the petition is at the motion to dismiss stage. This indicates that the litigation before this Court has advanced further than litigation on the cross-claims before the Tennessee court.

Next the Court considers whether the state procedures are adequate to protect plaintiff's federal rights. The Supreme Court noted in Moses H. Cone that it is not clear whether state courts, as much as federal courts, are obliged to compel arbitration under § 4 of the FAA. 420 U.S. at 26. But even assuming that the state court would have to compel arbitration under § 4, "when the state court is adequate, . . . the factor carries little weight." Ryan v. Johnson, 115 F.3d 193, 200 (3d Cir. 1997) ("[T]he mere fact that the state forum is adequate does not counsel in favor of

---

[3] The Court notes that the Tennessee court struck LMI's cross-claims for failure to comply with the Tennessee Rules of Civil Procedure, and granted LMI's motion to assert the amended cross-claim on August 31, 2017. (See Hume Decl., Ex. 3 ¶¶ 1-2; Aug. 18 Tr. at 49:11-16.) As such, there is a plausible argument that the instant litigation commenced before the Tennessee claims were asserted. But since this factor weighs in favor of federal jurisdiction even if they had been properly filed in June 2017, the Court need not base its decision on the August hearing.

10

abstention, given the heavy presumption the Supreme Court has enunciated in favor of exercising federal jurisdiction. Instead, this factor is normally relevant only when the state forum is inadequate. For example, in Cone, the federal plaintiff sought an order compelling arbitration. It was questionable whether the state court had the power to grant such an order, and the Supreme Court weighed this factor against abstention."). As such, this factor is likely neutral, and weighs neither against nor for the exercise of federal jurisdiction.[4]

The fifth factor—whether the federal forum is less inconvenient than the state forum—also weighs in favor of federal jurisdiction. LMI argues that it has "no connection to the State of New York," (Mem. in Supp. at 15), but in the Funding and Retainer Agreements, LMI explicitly consented to New York jurisdiction, (Funding Agreement at 14; Retainer Agreement at 2). "A party who agrees to arbitrate in a particular jurisdiction consents not only to personal jurisdiction but also to venue of the courts within that jurisdiction." Doctor's Assocs., Inc. v. Stuart, 85 F.3d 975, 983 (2d Cir. 1996); see also Victory Transp. Inc. v. Comisaria Gen. de Abastecimientos y Transportes, 336 F.2d 354, 363 (2d Cir. 1964) ("By agreeing to arbitrate in New York, . . . the [defendant] must be deemed to have consented to the jurisdiction of the court that could compel the arbitration proceeding in New York."). Thus, LMI cannot now claim that New York is inconvenient, having consented to the state's jurisdiction in the arbitration agreements.

---

[4] Of course, if state courts are not required to compel arbitration under § 4, then this factor would weigh in favor of this Court exercising jurisdiction.

Finally, the Court considers whether the Tennessee state court has assumed jurisdiction over any res in controversy. The action before the Court is not a controversy over property—it is a question of contract (i.e., whether arbitration must be compelled). See Moses H. Cone, 420 U.S. at 938-39 (noting that a petition to compel arbitration presented no dispute over "res or property"). Additionally, a number of the claims by LMI in the Tennessee litigation have little to do with the distribution of the settlement fund. Rather, they are claims of breach of fiduciary duty, unlawful conversion, and unjust enrichment. And even if the underlying settlement funds sufficed to make this a property action—which the Court does not concede—this factor is not dispositive. The factors discussed previously weigh too heavily in favor of federal jurisdiction.

Thus, the Colorado River factors clearly counsel against abstention, and the motion to dismiss is DENIED.

III.   PETITION TO COMPEL ARBITRATION

    A. Legal Principles

"[T]he FAA was designed to promote arbitration." AT&T Mobility LLC v. Concepción, 563 U.S. 333, 345 (2011). It embodies a "national policy favoring arbitration," and "a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." Concepción, 563 U.S. at 346 (quoting Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443 (2006); Moses H. Cone, 460 U.S. at 24). Under the Act, "an agreement in writing to submit to arbitration an existing controversy . . . shall be valid,

12

irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract," 9 U.S.C. § 2, including "generally applicable contract defenses, such as fraud, duress, or unconscionability," Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996).

The FAA applies to a petition to compel arbitration where, as here, a "written provision in . . . a contract evidencing a transaction involving commerce" states that the parties will "settle by arbitration." 9 U.S.C. § 2. A party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction . . . in a civil action . . . of the subject matter of a suit arising out of the controversy between the parties . . . ." 9 U.S.C. § 4. The FAA's applicability can be based on federal question jurisdiction, in which case the Court must apply the "look-through" approach outlined in Vaden v. Discover Bank, 556 U.S. 49 (2009), or on diversity jurisdiction. Hermes of Paris, Inc. v. Swain, 867 F.3d 321, 326 (2d Cir. 2017) ("[C]omplete diversity is measured by reference to the parties to the petition to compel arbitration.").

Once the threshold question of the FAA's applicability has been answered, the moving party must show that (1) there is a valid agreement between the parties to arbitrate disputes, and (2) the instant dispute falls within the scope of the arbitration agreement. See Hartford & Indem. Co. v. Swiss Rein-Am. Corp., 246 F.3d 219, 226 (2d Cir. 2001). "Whether or not the parties have agreed to arbitrate is a question of state contract law." Schnabel v. Trilegiant Corp., 697 F.3d 110, 119

13

(2d Cir. 2012); see also Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 846 (2d Cir. 1987) ("[W]hile the [FAA] requires a writing, it does not require that the writing be signed by the parties.").

Courts review motions to compel arbitration under a summary judgment standard. Thomas v. Pub. Storage, Inc., 957 F. Supp. 2d 496, 499 (S.D.N.Y. 2013). Such a motion may be granted "'when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that movant is entitled to judgment as a matter of law.'" Id. (citing Cohen v. UBS Fin. Servs., Inc., No. 12-cv-2147, 2012 WL 6041634, at *1 (S.D.N.Y. Dec. 4, 2012)).

B. Analysis[5]

The first issue before the Court is whether it has subject matter jurisdiction over the underlying dispute, as required by the FAA. Here, diversity jurisdiction exists under 28 U.S.C. § 1332(a)(1). LMI is an S corporation organized under Tennessee law with its principal place of business in Tennessee; KM is a limited liability partnership with its principal place in New York (and no partners that are Tennessee citizens); and BL is a limited liability company with its principal place of business in Connecticut (and no members in Tennessee). (Compl. ¶¶ 7-9.) As such, there is complete diversity. Additionally, more than $75,000 is in controversy. (Id.

---

[5] On September 19, 2017, this Court notified the parties that it planned to resolve the motion to dismiss and the petition to compel arbitration simultaneously, and directed the parties to submit "additional materials in support of either motion" by September 29, 2017 if they so chose. (ECF No. 23.) LMI did not submit a brief or other document to this Court arguing for or against the merits of the instant petition to compel arbitration. LMI's supporting materials for its motion to dismiss did not discuss the subject.

14

¶ 10.) Because this dispute would otherwise satisfy the requirements for jurisdiction under 28 U.S.C. § 1332, this Court has subject matter jurisdiction.

Turning to the factors which indicate whether the Court must compel arbitration, the Court finds that the parties entered into a written agreement to arbitrate. The Retainer Agreement requires that "[a]ny dispute between KM and Lee Medical will be . . . resolved in New York City via arbitration according to American Arbitration Association rules and procedures." (Retainer Agreement at 2.) And the Funding Agreement has a similar mandate: "Any dispute, claim or disagreement arising out of, in connection with or in any way related to this Agreement or the breach thereof, . . . will be settled by arbitration . . . ." (Funding Agreement at 14.) The language of both agreements plainly requires arbitration, and LMI has provided no information to dispute their validity.[6]

Finally, the Court considers whether the dispute between the parties falls within the scope of the Retainer and Funding Agreements. Based on the language cited above, it is clear that disputes over fee arrangements are within the scope of those broad agreements, and nowhere does LMI dispute this. As such, the Court compels arbitration under the FAA.

---

[6] In arguing for abstention, LMI notes that a Tennessee statute, the Tennessee Litigation Financing Consumer Protection Act, could "render BL Funding's arbitration agreement unenforceable." (Mem. in Supp. at 10.) But this Court was not briefed on this question of state law, even after providing an opportunity for LMI to submit materials on the question. At the very least, this is an open question of state law, as "there are no published decisions in Tennessee wherein the courts have weighed in on whether business entities" are covered by this state statute. (Id.; see also Tenn. Code Ann. § 47-16-102 ("'Consumer' means any natural person who resides, is present or is domiciled in this state, or who is or may become a plaintiff or complainant in a dispute in this state."); id. § 47-16-105 ("A litigation financier shall not . . . [a]ttempt to effect mandatory arbitration or otherwise effect waiver of a consumer's right to a trial by jury.").) This Court will not wade into the state law arena on this question, and chooses to compel arbitration based on the facts presented by the parties.

## IV. MOTION TO ENJOIN LMI FROM PURSUING CLAIMS AGAINST KM AND BL IN STATE COURT

The Anti-Injunction Act, 28 U.S.C. § 2283, provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." However, the Supreme Court has identified three exceptions to this rule: "(i) the express provisions of another act of Congress authorizing such an order; (ii) necessity in aid of the federal court's jurisdiction and (iii) the need to protect or effectuate the federal court's judgments." Standard Microsystems Corp. v. Texas Instruments Inc., 916 F.2d 58, 60 (2d Cir. 1990) (citing Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 287-88 (1970)). A federal court order compelling arbitration falls into the third category, and an injunction may sometimes be necessary when one party is seeking a related motion in state court. Emilio v. Sprint Spectrum, L.P., 315 F. App'x 322, 325 (2d Cir. 2009) (holding that an injunction was proper when defendant sought a "motion in state court to enjoin Emilio to dismiss his arbitration claims"). However, the Court need not issue such an injunction.

The Court notes that the Tennessee state court has stayed LMI's claims against KM and BL, pending this Court's resolution of KM and BL's petition. The Court expects that the Tennessee court will find this Opinion informative in resolving the motions before it. As such, the Court sees no need to burden the parties with an injunction at this time, as there is no indication that they will not

16

comply with its Order compelling arbitration. If in the future the parties have a reason to seek an injunction, they may renew that application.

V. CONCLUSION

For the reasons set forth above, the petition to compel arbitration is GRANTED, the petition for an injunction is DENIED, and the motion to dismiss is DENIED. The Clerk of Court is directed to terminate the motion at ECF No. 9 and to terminate this case.

SO ORDERED.

Dated:   New York, New York
         October 16, 2017

_____
KATHERINE B. FORREST
United States District Judge
